IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GENE M.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:20cv00327 |
| | ) |
| KILOLO KIJAKAZI,[2] | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Gene M. ("Gene") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381-1383f. Gene alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) determine his RFC using a function-by-function analysis and (2) assess his allegations regarding his symptoms.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 15) and **DENYING** Gene's Motion for Summary Judgment (Dkt. 13).

**STANDARD OF REVIEW**

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Gene failed to demonstrate that he was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Gene protectively filed for SSI in May 2016 claiming his disability began on May 31, 2016,[4] due to heart disease, depression, anxiety, blurred vision and dizziness, chest pain and fatigue, history of heart attacks, multiple stent placements, short term memory, high blood

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[4] Gene amended his alleged onset date from October 11, 2011 to May 31, 2016 at his initial hearing. R. 38.

2

pressure, tiring easily and being easily overwhelmed, and shortness of breath with exertion. R. 246–47, 313. The state agency denied Gene's applications at the initial and reconsideration levels of administrative review. R. 117, 132. On October 24, 2018, ALJ Thomas Erwin held an initial hearing to consider Gene's claim for SSI. R. 36–56. Counsel represented Gene at the hearing, which included testimony from vocational expert Robert Jackson. After that hearing, the ALJ ordered a physical consultative examination. R. 15. The ALJ then held a supplemental hearing on May 8, 2019. R. 62–84. Counsel represented Gene at the supplemental hearing, which included testimony from vocational expert Mark Halman. On May 21, 2019, the ALJ entered his decision analyzing Gene's claims under the familiar five-step process[5] and denying his claim for benefits. R. 15–29.

The ALJ found that Gene suffered from the severe impairments of coronary artery disease, chronic obstructive pulmonary disease (COPD), obesity, and hyperlipidemia. R. 17. The ALJ determined that these impairments either individually or in combination did not meet or medically equal a listed impairment. R. 20. The ALJ specifically considered listing 3.02 (chronic respiratory disorders) and 4.04 (ischemic heart disease). The ALJ also considered Social Security Ruling 02–1p. Soc. Sec. Ruling 02–1p Titles II & Xvi: Evaluation of Obesity,[6] SSR 02–1p, 2002

---

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[6] In May 2019, the Social Security Administration rescinded and replaced SSR 02-1p with SSR 19-2p. Soc. Sec. Ruling 19-2 Titles II and Xvi: Evaluating Cases Involving Obesity, SSR 19-2p, 2019 WL 2374244 (S.S.A. May 20, 2019). The ALJ issued the decision in this case in November 2018, before the new rule. The old rules contained in SSR 02-1p therefore apply. See Williams v. Saul, No. 1:19-cv-983, 2020 WL 5802707, at *5 n.2 (E.D. Va. Sept. 29, 2020).

WL 34686281 (S.S.A. Sept. 12, 2002)[7]; R. 21. The ALJ found that regarding his mental impairments, Gene had mild limitations in interacting with others and concentrating, persisting, or maintaining pace and no limitation in understanding, remembering, and applying information and adapting or managing oneself. R. 18–20.

The ALJ concluded that Gene retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 22. Specifically, the work must allow for at least two hours of sitting per day. Id. Gene can occasionally balance and have occasional exposure to temperature extremes, humidity, pulmonary irritants, and hazards. Id. He can have no exposure to unprotected heights, including ladders, ropes, or scaffolds. Id. The ALJ noted that Gene had past relevant work as an iron welder and boiler maker, but that he was unable to perform such work. R. 27. The ALJ determined that Gene could perform jobs that exist in significant numbers in the national economy such as checker, ticket seller, addressing clerk, and production assembler. R. 29. Thus, the ALJ determined that Gene was not disabled. Id. Gene appealed the ALJ's decision and the Appeals Council denied his request for review on April 21, 2020. R. 1–4.

## ANALYSIS

Gene alleges that the ALJ failed to properly determine his RFC using a function-by-function analysis and assess his allegations regarding his symptoms.

### A. Medical History Overview

1. Medical Treatment[8]

---

[7] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

[8] Gene complained he suffered from mental conditions at the hearing. He sought no psychiatric treatment throughout the relevant time period and he does not raise any arguments about the ALJ's assessment of his mental condition in his motion for summary judgment.

Gene had two heart attacks in 2011, several years prior to his alleged onset date, which required the placement of stents. R. 383. In 2013 he suffered a third heart attack and had in-stent restenosis in 2013 and 2014, which was treated with angioplasty. Id. Gene presented to the emergency room in September 2015 for chest pain. R. 23, 385. His physical exam was negative for acute abnormalities, however, he had in-stent restenosis, which was treated with angioplasty and stenting. R. 393. Gene returned to the emergency room in December 2015 for chest pain. R. 872. An examination showed possible low-risk inferior ischemia and he was treated conservatively. Id.

Gene followed-up with his cardiologist Steven Goldstein, D.O., in August 2016 and denied further chest pain and shortness of breath. R. 787. Dr. Goldstein provided Gene with several months of antiplatelet medication and advised him to follow-up in six months. R. 787.

Gene presented to the emergency room in September 2016 complaining of chest pain. R. 821. Treatment notes indicated mild anterior chest wall tenderness, but otherwise were unremarkable. R. 827. Gene was discharged the same day. Gene followed-up with Dr. Goldstein in March 2017. R. 862. Dr. Goldstein noted that Gene walks 30 minutes per day and denies chest pain or shortness of breath. R. 862. He also noted that Gene was unable to afford one of his antiplatelet medications but was maintained on aspirin. Id.

Gene returned to emergency room in May 2017 complaining of chest pain. R. 898. Treatment notes indicated that Gene was unable to complete a partial stress treadmill due to shortness of breath, but that his stay was "uneventful" and that he had no signs or symptoms of infection, his chest x-ray was clear, he had no chest pains during his stay, and he declined further imaging studies. Id. Gene was discharged the next day. R. 899.

Gene followed-up with Dr. Goldstein in October 2017. R. 872. Dr. Goldstein noted that Gene denied chest pain and shortness of breath and noted normal physical condition. Id. Dr. Goldstein further noted that Gene now received his antiplatelet medication through the hospital. R. 874. Gene reported to the emergency room several weeks later complaining of chest pain. R. 935. He was diagnosed with complex coronary artery disease with symptoms consistent with unstable angina. R. 941. Treatment notes indicate that he was negative for myocardial infarction and that he was pain free with medical therapy. R. 942. Treatment notes further indicate that his attending physician wished to continue treatment, however Gene declined these services. Id. Gene testified at the administrative hearing that the attending physician wanted to replace his stents, but he wanted to follow-up with Dr. Goldstein first. R. 46. Gene did not follow-up with Dr. Goldstein after the emergency room visit because he "started feeling good" and did not have insurance. Id. Gene has no record of treatment after October 2017. R. 24.

2. Medical Opinions

In November 2018, Okwuchukwu Obi, M.D., performed a consultative physical examination. R. 946–57. Dr. Obi concluded that Gene could be expected to sit, stand, and walk normally in an 8-hour workday with normal breaks. He further found that Gene could carry 20 pounds frequently and 40 pounds occasionally and that he could frequently perform postural activities including bending, stooping, crouching, and squatting. R. 951. Dr. Obi noted Gene's history of heart attacks but stated that Gene denied pain at the examination and denied limitations with sitting, standing, or lifting. R. 946. The ALJ gave Dr. Obi's opinion significant weight. R. 27.

State agency physician Jameson Buston, M.D., reviewed the record in December 2016 and found Gene capable of light work, with certain exertional, postural, and environmental

limitations. R. 112–13. Specifically, Dr. Buston found that Gene could stand or sit about six-hours in an eight-hour workday. R. 112. The ALJ gave Dr. Buston's opinion great weight. R. 27. In April 2017, state agency physician Joseph Duckwall, M.D., reviewed the record also concluding that Gene could perform light work with similar exertional, postural, and environmental limitations. R. 127–29. The ALJ gave Dr. Duckwall's opinion great weight. R. 27.

### B. Physical RFC and Function-by-Function Analysis

Gene argues that the ALJ's physical RFC findings are not supported by substantial evidence. Pl.'s Br. at 20–21, Dkt. 14. He specifically argues that the ALJ "failed to make any specific findings regarding [his] ability to sit and stand or his need to lie down during the day" and similarly "failed to make any specific findings regarding whether [his] impairments would cause him to experience episodes of pain or fatigue necessitating breaks and how often those breaks would occur." Pl.'s Br. at 20, Dkt. 14. Gene also argues that the ALJ failed to include a specific limitation in standing and walking, which constituted reversible error. Pl.'s Br. at 19, Dkt. 14.

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of

each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's decision includes the narrative discussion required by SSR 96-8p and contains sufficient information to allow meaningful review. Unlike the ALJ in Mascio, the ALJ in this case did not fail to consider conflicting medical evidence. Further, the court is "not left to guess about how the ALJ arrived at his conclusions" because the ALJ's findings include a comprehensive analysis of Gene's medical records, the medical opinions, Gene's hearing testimony, and the ALJ's conclusions. R. 22–27. The ALJ's opinion specifies how the limitations in the RFC correlate with his severe impairments.

Specifically, Gene's arguments regarding the RFC's exertional limitations for walking, standing, and sitting are without merit. Gene asserts that the ALJ's failure to include a specific limitation in standing and walking "is a fatal flaw . . . because the vocational expert was asked to

8

consider an individual who could sit two hours per day, which is different than the ultimate [RFC limitation] of at least two hours of sitting per day." Pl.'s Br. at 19, Dkt. 14. Gene further contends that without a specific limitation that "there is no way to determine if he can perform the sedentary positions" identified by the vocational expert. Id.

The regulations state that a person capable of light work is assumed capable of sedentary work unless there are additional limiting factors. 20 C.F.R. § 404.1567(b). Here, there is no indication that Gene would be unable to sit for long periods of time and he cites no specific objective or subjective evidence to support his argument.[9] See Pl.'s Br. at 19, Dkt. 14. Moreover, the ALJ relied on several medical opinions in determining the RFC, all of which suggested Gene could sit for long periods of time. See R. 26–27, 112, 128, 951. The ALJ gave great weight to the state agency physicians, both of whom suggested Gene could sit or stand for six hours in an eight-hour day. R. 26–27, 112, 128. The ALJ gave significant weight to the consultative examiner, who found that Gene could sit, stand, and walk normally in an eight-hour day and could remain seated for four hours without changing position. R. 951, 953. The consultative examiner further noted that Gene "denie[d] limitations with sitting, standing, or lifting." R. 946. Given the lack of evidence supporting limiting factors, it was not error for the ALJ to assume that Gene was capable of sedentary work as well as light work.

Moreover, the ALJ properly relied on the vocational expert's testimony. The ALJ noted that the vocational expert should provide both sedentary and light work but that the light work should "follow the traditional definition[,] which is six hours of standing and walking[] and two hours of sitting." R. 79. The ALJ asked the vocational expert to eliminate light work "like a flagger . . . where there's really no sitting at all." Id. The vocational expert noted that work

---

[9] At the hearing, Gene noted that he "gets kind of antsy" when sitting. R. 76. In his function report he did not indicate that his medical condition affected his ability to sit. R. 285, 332.

9

existed at both the light and sedentary level, confirmed that his testimony was consistent with the Dictionary of Occupational Titles, and stated that "all of these jobs would certainly be involved with sitting or can be up to two hours, if not more, and certainly more for the sedentary." R. 81. Gene's argument that the ALJ erred based on the difference between the hypothetical question and the RFC is unpersuasive. The ALJ clearly explained that he wanted the vocational expert to consider light and sedentary jobs which allowed sitting and the vocational expert confirmed that all jobs included would allow two hours or more of sitting, directly tracking the RFC limitation requiring "at least two hours of sitting per day." R. 22, 79–81.

The ALJ also adequately accounted for Gene's ability to sit or stand in an eight-hour day. As discussed, the state agency physicians and the consultative examiner all found that Gene would be able to work at the exertional level specified in the RFC. See R. 112, 128, 951. Moreover, Gene specifically "denie[d] limitations with sitting [and] standing" at his consultative examination, and the consultative examiner found no specific issues with his musculoskeletal system. R. 949. The ALJ clearly considered Gene's exertional limits, noting specifically that "in giving some weight to the claimant's complaints of intermittent chest pain and shortness of breath . . . the job must allow for at least two hours of sitting." R. 27. Gene's arguments regarding his exertional limitations amount to a request that the Court reweigh the evidence, which I am not permitted to do.

Finally, the ALJ sufficiently analyzed whether Gene would experience pain or fatigue that would necessitate breaks or the need to lie down. Pl.'s Br. at 20, Dkt. 14. Gene testified at the hearing to feeling fatigue and needing to take breaks, but otherwise pointed to no medical records or other evidence. Id. Nevertheless, the ALJ acknowledged that Gene had a history of heart attacks and that he presented at the emergency room several times during the relevant

10

period. The ALJ noted that "his symptoms resolved quickly with treatment, and he generally denied significant cardiac symptoms when following up with his cardiologist." R. 25. The ALJ also noted that Gene failed to report consistent chest pain or shortness of breath to his cardiologists and that his appointments usually only consisted of medication renewals. R. 26. The ALJ also stated that while he understood Gene had no insurance that it was notable that he had not received medical treatment since October 2017, especially since it appeared he had not exhausted all efforts to seek treatment. R. 22. In reviewing his mental condition, the ALJ stated that Gene engaged in light chores and otherwise did not complain to treating providers of difficulty maintaining concentration, persistence, or pace. R. 19–20. Finally, both the consultative examiners and state agency doctors suggested Gene could perform light work and complete an eight-hour day, and Dr. Obi specifically concluded that Gene could perform a day with only normal breaks. R. 114, 130, 951.

The ALJ is not required to make specific findings related to each of Gene's subjective assertions. See Shinaberry v. Saul, No. 18–2096, 2020 WL 908887, at *6 (4th Cir. Feb. 26, 2020) (ALJ did not err in refusing to fully credit claimant's subjective statements regarding her physical limitations where claimant pointed to no medical evidence in support of a limitation). The ALJ was only required to create a narrative discussion that builds "an accurate and logical bridge from the evidence to his conclusion," which the ALJ did in his discussion of the medical and non-medical evidence, Gene's alleged symptoms, and the medical opinions of record. The ALJ considered Gene's complaints and explained why the evidence did not support greater RFC restrictions. This narrative discussion allows this court to see how the evidence in the record— both medical and nonmedical—supports the ALJ's RC determination. Because I was not "left to

guess" at how the ALJ reached his RFC determination, I find that the ALJ's conclusion is supported by substantial evidence. Mascio, 780 F.3d at 637.

### C. Subjective Allegations

Gene argues that the ALJ's assessment of his allegations is not supported by substantial evidence. Specifically, Gene argues that the ALJ never addressed his allegations regarding his inability to sit and stand, fatigue and need to lie down, and shortness of breath. Pl.'s Br. at 22, Dkt. 14. Gene further contends that the ALJ did not indicate how his allegations were inconsistent with the record. Pl.'s Br. at 21, Dkt. 14.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims,[10] SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain.[11] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity,

---

[10] In March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016) (effective March 28, 2016).

[11] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

The ALJ's opinion includes a discussion of Gene's medical history along with Gene's own allegations and the ALJ adequately supported his finding that Gene's allegations were not entirely consistent with the medical evidence and other evidence in the record. Contrary to Gene's claim that the ALJ never assessed his allegations, the ALJ acknowledged Gene's history of heart attacks prior to his alleged onset date and specifically noted that Gene complained that he sometimes felt fatigued and that he would often lie down one to two times per day. R. 22, 24. The ALJ also noted Gene's reports that he could walk only approximately 150 yards before needing to stop and rest and that he experienced chest pain and shortness of breath. R. 23, 27.

In support, the ALJ carefully addressed Gene's allegations regarding his impairments. Despite his subjective allegations, the ALJ noted that Gene was generally maintained on his medication and that while he presented at the emergency room several times after his alleged onset date that at each visit his symptoms quickly resolved with treatment. R. 25. The ALJ also noted that Gene frequently reported no significant symptoms at his follow-up appointments with his treating provider. R. 25. The ALJ recognized that Gene did not have health insurance, but found it notable that Gene did not appear to exhaust all efforts to seek treatment and that he had no emergency room visits or hospitalizations since October 2017. Id. The ALJ also considered Gene's activities of daily living, which consisted of walking for 30 minutes a day and performing light household chores. R. 19–20, 22–23.

Regarding Gene's allegations of chest pain and shortness of breath, the ALJ noted several appointments where Gene denied these symptoms. R. 23–24, 787, 862, 872, 879, 946 (denying

13

chest pain or shortness of breath). The ALJ also noted that the treatment notes at these appointments reflected normal examination findings. Id. Moreover, the ALJ specifically accounted for Gene's chest pain and shortness of breath, noting that he gave Gene's complaints "some weight" and therefore required work that allowed for "at least two hours of sitting" and no exposure to unprotected heights. R. 27. Regarding complaints of fatigue, the ALJ specifically acknowledged his complaints, but noted at least one appointment where Gene denied fatigue. R. 24, 948; see also 787, 862, 872. The ALJ also found significant Dr. Obi's consultative examination, where he concluded that Gene would be able to perform work for an eight-hour day with only normal breaks. R. 951. Finally, the ALJ addressed Gene's allegations regarding his inability to sit or stand. The ALJ noted that Gene had specifically "denie[d] limitations with sitting [and] standing" at his consultative examination. R. 949. The ALJ also considered Dr. Goldstein's treatment notes, which included Gene's report that he walks 30 minutes per day. R. 862. The ALJ relied on the state agency physicians and consultative examiner's opinions, all of which stated that Gene would be able to work at the exertional level specified in the RFC. See R. 112, 128, 951.

      Here, the ALJ provided sufficient support for his analysis of Gene's subjective complaints. It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). I conclude that the ALJ supported his analysis of Gene's subjective

14

complaints with substantial evidence, and that Gene can perform work at the level stated in the ALJ's opinion.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment and **DENYING** Gene's Motion for Summary Judgment.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered: August 5, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge